## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**TERRELL D. JORDAN,**

    **Plaintiff,**

    **v.**

**SHAWN JAY Z CARTER,** *et al.*,

    **Defendants.**

**Case No. 1:23-cv-479**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Bowman**

## <u>OPINION AND ORDER</u>

The United States moves this Court (*see* Doc. 12) to reconsider an earlier opinion and order, (Doc. 10, #77–78), in which the Court remanded this entire case to the Hamilton County, Ohio, Court of Common Pleas under 28 U.S.C. § 1447(c). Although the government declined the Court's earlier invitation to weigh in on the remand issue, it now claims the Court should have instead dismissed the government as a defendant and only then remanded the remaining claims to state court, even if the Court concluded it lacked jurisdiction over the entire dispute. After reviewing the government's newly tendered arguments, the Court finds that it erred in concluding in the previous opinion and order that the removal here was attempted solely under 28 U.S.C. § 1442; rather, the Court now finds that the government also invoked the Westfall Act, 28 U.S.C. § 2679. And given that additional basis for removal, the Court had more options at its disposal in connection with remand than it previously thought. Accordingly, the Court **GRANTS** the Motion for Reconsideration (Doc. 12), and **AMENDS** its prior Order as follows: The Court **DISMISSES WITHOUT PREJUDICE** any state-law tort claims Jordan raised against former President

Obama, which (as explained below) legally constitute Federal Tort Claims Act (FTCA) claims against the United States, and then **REMANDS** all other claims to the Hamilton County, Ohio, Court of Common Pleas.

## BACKGROUND

The Court had detailed the factual background of this case in its prior Opinion and Order. (Doc. 10, #62–65). But it will highlight the salient points here.

Jordan's difficult-to-parse Complaint, which he filed in the Hamilton County Court of Common Pleas, (Doc. 1-4), appears to allege that he has endured repeated harassment and sexual assault at the hands of several prominent political and public figures, (Doc. 3, #25–27)—a story he has told multiple times in other frivolous federal suits. For this abuse, Jordan demands damages to the tune of millions of dollars from each of the named Defendants, as well as an apparent protective order to avoid further harassment and stalking. (*Id.* at #27).

One of the Defendants whom Jordan properly served, former President Obama, removed this suit to federal court under the federal officer removal statute, 28 U.S.C. § 1442. (Doc. 1, #1 (declaring that "Defendant Former President Barack H. Obama removes to this Court [this] civil action" only "[u]nder 28 U.S.C. § 1442")). That said, former President Obama's Notice of Removal also generally cited the Westfall Act, 28 U.S.C. § 2679, noting that the government (via authority delegated by the Attorney General) would certify that he was acting in the scope of his employment with the United States. (Doc. 1, #1–2). That July 28, 2023, certification

was filed in this Court as an attachment to former President Obama's § 1442(a)(1) Notice of Removal. (Doc. 1-5).

After removal, the government, citing this certification, sought to have the United States "substituted as the party defendant[] [under] 28 U.S.C. § 2679(d)(1)."[1] (Doc. 2). No party objected, and this Court recognized the United States as the properly substituted party defendant for any tort claims against former President Obama in its prior Opinion and Order. *Jordan v. Carter*, No. 1:23-cv-479, 2024 WL 804807, at *2 (S.D. Ohio Feb. 27, 2024). The United States then moved to dismiss the Complaint in toto arguing in large part that the Court lacked subject matter jurisdiction over the dispute because the allegations were "implausible, frivolous, unsubstantial, and devoid of merit" and thus did not give rise to federal court jurisdiction. (Doc. 6, #37, 39–40, 40 n.2). The Magistrate Judge agreed with the government and recommended a dismissal of the entire Complaint under Federal Rule of Civil Procedure 12(b)(1) for want of subject-matter jurisdiction. (Doc. 9, #57). No party objected to the R&R.

But the Court had concerns. Because this case was removed from state court, the Court noted that it was bound by the language in 28 U.S.C. § 1447(c), which instructs that "[if] at any time before final judgment it appears that the district court lacks subject matter jurisdiction" over a removed case, "the case shall be remanded." So given the government and the Magistrate Judge both agreed subject-matter

---

[1] The Court notes that the United States's substitution could not legally have been completed under 28 U.S.C. § 2679(d)(1), which applies only to cases "commenced … in a United States district court." The substitution was actually effectuated under the directly applicable provision: 28 U.S.C. § 2679(d)(2), which governs cases "commenced … in a State court."

jurisdiction was wanting here at the time of removal, the plain language of this provision appeared to require a remand of the entire cause, rather than a dismissal as they suggested. The Court concluded that the parties should be allowed to weigh in, given the issue had not been briefed. (2/6/24 Not. Order). Despite the express and unequivocal invitation directed to *all parties*,[2] no one responded. So the Court evaluated the issue as follows: First, in line with the government's argument, (Doc. 6, #40 n.2), and the R&R's recommendation, (Doc. 9, #56), the Court found that subject-matter jurisdiction was lacking at the time of removal on account of Jordan's fantastic allegations. *Jordan*, 2024 WL 804807, at *3. And then, given the Court "before final judgment … [found it] lack[ed] subject matter jurisdiction," it remanded "the case" under § 1447(c)'s plain language. *Jordan*, 2024 WL 804807, at *6, *8.

---

[2] The United States's suggestion that the February 6, 2024, notation order was somehow unclear that the Court was both contemplating the application of the plain language of § 1447(c) to remand the entire case to state court and asking the United States to file a brief is without textual support. (Doc. 12, #84 n.5). Not only did the Court invite the United States to respond *by name*, (2/6/24 Not. Order), but the notation order clearly stated that "it appears the Court would be required to remand this matter to state court under the plain language of 28 U.S.C. § 1447(c), which states that, if 'the district court lacks subject matter jurisdiction,' then 'the case shall be remanded.'" (*Id.*). This language discusses remand of the entire case: the order expressly referenced the specific language of § 1447(c) requiring remand of "the case" and used the word "matter," which most naturally refers to 'the entire case' when employed in a judicial context. *Matter*, Black's Law Dictionary (11th ed. 2019) ("A subject under consideration, esp. involving a dispute or litigation; CASE."). So this notation order clearly asked for all parties' input on whether the entire case should be remanded. Moreover, the Court's inclusion of the words "including Movant United States of America" could not reasonably carry a tacit suggestion that the United States should feel itself free not to brief the question because the Court was somehow forecasting a specific outcome. (Doc. 12, #84 n.5). Indeed, the only individuals to whom the Court could have been speaking at that time were Jordan, former President Obama, and the United States. The most sensible reading of that clause is to realize that the Court asked the one party most adversely impacted by remand—the United States—to weigh in on the matter.

That said, the Court did not reach this result lightly. It noted that this statutory remand command created something of a "jurisdictional quandary" for the United States: observing that the government "c[ould not] be sued in state court … but [also] c[ould not] exercise its statutorily granted authority to remove the case to federal court and make it stick here through a successful termination of the case in the government's favor because the claims are wholly divorced from reality and the federal court otherwise lacks subject-matter jurisdiction." *Id.* at \*4. Despite this quandary, though, the Court found itself compelled by the plain language of the statute, and Sixth Circuit caselaw that has made clear that § 1447(c) admits of no futility exception, to remand when the court lacks subject-matter jurisdiction over a removed cause. *Id.* at \*6, \*8. In line with this analysis, the Court remanded the case to the Hamilton County Court of Common Pleas on February 27, 2024, where the case now remains. (Doc. 11).

Twenty-eight days later, the United States, wise to the fact that the case was now back in state court, belatedly weighed in on the remand question. (Doc. 12). Citing Federal Rules of Civil Procedure 59(e) and 60(b), it moved the Court to reconsider its decision to remand the entire case insofar as the United States was concerned, so that the claims against it could be dismissed outright. (*Id.* at #81). The United States advances two arguments: (1) the Court's opinion and remand order conflicts with *Osborn v. Haley*, 549 U.S. 225 (2007), and (2) the policy behind the federal officer removal statute should compel the Court to dismiss the claims against former President Obama despite the plain language of § 1447(c). (*Id.* at #86–94). On

May 21, 2024, Jordan filed (tardy) nominally styled objections to the government's motion, in which he added more fantastic and largely incoherent allegations to the grand conspiracy discussed in his Complaint. (Doc. 13). But nothing in these objections responded to the legal issues presented in the Court's prior Opinion and Order or the government's motion. So the matter is ripe for the Court's review.

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically recognize motions for reconsideration. Rather, such styled motions either constitute motions to alter or to amend a judgment under Rule 59(e) or motions for relief from judgment under Rule 60(b). *Pankiw v. Fed. Ins. Co.*, No. 1:04-cv-2334, 2007 WL 2344753, at *1 (N.D. Ohio Aug. 15, 2007). The government cites both rules as the purported bases for its request for the Court to reconsider its prior decision. (Doc. 12, #80). Courts interpret Rules 59(e) and Rule 60(b) narrowly. "A court may grant a Rule 59(e) motion to alter or [to] amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). Similarly, "[a] Rule 60(b) motion is neither a substitute for, nor a supplement to, an appeal." *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007) (collecting cases). "And the public policy favoring finality of judgments limits the availability of relief under the rule." *Id.* at 372 (cleaned up). Under Rule 60(b)(1), a Court may grant a party relief from judgment for "mistake[s]," which "include[] a judge's errors of law." *Kemp v. United States*, 596 U.S. 528, 534 (2022).

The government argues only that the Court legally erred, so no other basis for relief will be considered. (Doc. 12, #85–86). And although the government cites both Rule 59(e) and 60(b) as the vehicles for obtaining such relief, courts have "long treated Rule 60(b) motions filed within 28 days [of the entry of a district court's judgment] as Rule 59(e) motions." *Banister v. Davis*, 590 U.S. 504, 520 n.9 (2020) (ellipsis omitted); *accord Braggs v. Perez*, 42 F. App'x 678, 680 (6th Cir. 2002). Moreover, courts have consistently understood that when "a motion [in substance] calls into question the correctness of a judgment [it] should be treated as a motion under Rule 59(e), however it is styled." *Clarendon Ltd. v. Foster*, 7 F.3d 232, 1993 WL 339703, at *6 & n.5 (6th Cir. 1993) (table) (observing that "[v]irtually every circuit court has followed th[at] reasoning" and collecting cases). Because the government here has not sought to set aside or to bring a collateral attack to a final judgment (which would be the relief requested under Rule 60(b)) but has instead asked the Court to reevaluate and to modify its remand order for a more favorable outcome, (*see* Doc. 12, #86), the Court construes the motion for reconsideration as a Rule 59(e) motion for the Court to alter or to amend its judgment. *Banister*, 590 U.S. at 518–19 (explaining the historical origins of Rules 59(e) and 60(b) and noting that Rule 59(e) served as the vehicle for a court to correct errors in its judgment within the confines of an existing dispute, while Rule 60(b) permitted parties to mount collateral attacks to already final judgments). So this Court is tasked with assessing whether there is a need to correct "a clear error of law" that led to the prior remand order. *Intera Corp.*, 428 F.3d at 620.

7

### JURISDICTION UNDER 28 U.S.C. § 1447(d)

Before turning to the government's arguments, the Court must address a predicate jurisdictional question (ironically, as a prelude to other jurisdictional questions). Can the Court entertain the government's motion? This question arises because Congress has largely stripped courts of jurisdiction to review "order[s] remanding [] cases to the State courts from which [they were] … removed … on appeal *or otherwise*." 28 U.S.C. § 1447(d) (emphasis added). Courts have construed that bar to "preclud[e] further reconsideration or review of a district court's order remanding a case back to state court" on the theory that "remand divests the district court of any further jurisdiction over the case." *Bank of N.Y. Mellon v. Ackerman*, 949 F.3d 268, 269 (6th Cir. 2020) (collecting cases).

That said, Congress has included a special carveout to this jurisdiction-stripping provision: "an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d). As the Supreme Court recently explained, "the whole of [a district court's remand] order bec[omes] reviewable" so long as the removing party brought about removal pursuant to § 1442. *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 238 (2021). This review extends to all issues encapsulated in the remand order (i.e., rejection of other bases for removal), not just those specific to § 1442. *Id.* at 237–38. So while caselaw (before Congress amended § 1447(d) in 2011) had concluded that § 1447(d) had rendered "a remand for lack of subject matter jurisdiction [pursuant to § 1447(c)] immune from review," *SHR Ltd. P'shp v. SWEPI LP*, 173 F. App'x 433, 437 (6th Cir. 2006), that rule does not govern

cases that fall in the special exception rendering the remand of § 1442 cases reviewable. *Cf. BP P.L.C.*, 593 U.S. at 243. Because former President Obama sought removal here pursuant to 28 U.S.C. § 1442(a)(1), (Doc. 1, #1), the Court finds that § 1447(d) does not strip this Court of jurisdiction to review its prior remand order under Rule 59(e). *Mathieu v. Cazi*, No. 23-cv-8663, 2023 WL 7277246, at *2 (S.D.N.Y. Nov. 1, 2023); *see Ackerman*, 949 F.3d at 269–70.

With that jurisdictional issue resolved, the Court turns to the motion's merits.

## LAW AND ANALYSIS

The Court begins and ends with *Osborn v. Haley*, the case on which the government principally relies in its motion. *Osborn* resolved what effect certification under the Westfall Act, 28 U.S.C. § 2679(d)(2), which statute immunizes federal officers from tort claims arising out of actions taken within the scope of their employment, had on removal of a state-law cause of action. 549 U.S. at 230. There, Osborn, an employee for a private company that contracted with the United States Forest Service, sued Haley, a Forest Service officer, for tortiously interfering with Osborn's employment after she was fired for having insulted Haley at a meeting he hosted at her workplace. *Id.* at 232. Osborn believed Haley induced her employer to discharge her in retaliation for her asking the Department of Labor to investigate Haley's denial of her application for a trainee position with the Forest Service. *Id.* at 232–33. Osborn had sued in state court. *Id.* at 232. But the local United States Attorney certified under the Westfall Act that Haley's actions were within the scope of his employment with the Forest Service, thereby leading the United States to

remove the cause under § 2679(d)(2). *Id.* at 233–34. After Osborn objected to the United States's substitution, the federal district court rejected the government's certification and remanded the cause to state court under § 1447(c) because it concluded that jurisdiction was lacking given the § 2679(d)(2) certification failed. *Id.* at 234–36.

The Supreme Court disagreed with the remand order. After reviewing the Westfall Act's language, particularly § 2679(d)(2)'s final clause treating the Attorney General's certification as "conclusive[] [of the] scope of office or employment for purposes of removal," the Supreme Court held that district courts cannot "remand [the] removed action on the ground that the Attorney General's certification was erroneous." *Id.* at 242. This is because the question (what the Supreme Court called a "significant federal question") whether Westfall Act immunity should be extended to the defendant federal officer—an immunity put in issue by the mere filing of the scope-of-employment certificate—itself constituted a valid federal question justifying removal.[3] *Id.* at 244–45. Thus, the district court's eventual decision not to extend the

---

[3] That said, the Supreme Court has suggested that there might be an exception to the rule that the filing of a scope-of-employment certification conclusively raises a substantial federal question supporting removal and a district court's Article III subject-matter jurisdiction over a Westfall Act cause. 549 U.S. at 250 n.14. It left open the question whether removal in the first instance could be justified in "fanciful" situations where the certification decision had no support in factual reality—in other words, instances when the certification was obviously frivolous. *Id.* That posited caveat parallels the rule in other federal cases that claims raising wholly insubstantial federal questions are deemed to lie beyond a court's Article III subject-matter jurisdiction. *Cf. Hagans v. Lavine*, 415 U.S. 528, 537–38 (1974) (explaining that the mere invocation of a federal question does not support federal subject-matter jurisdiction if the claim is "essentially fictitious," "wholly insubstantial," or "obviously frivolous" (citations omitted)). But because *Osborn* did not expressly recognize such an exception to Westfall Act certifications, the Court declines to break new ground and to determine whether such an exception validly exists and, if so, the scope of such an exception.

officer such immunity because other evidence undermined the probative value of that certification would not defeat the court's subject-matter jurisdiction over the cause, as a federal question existed at the time of removal (thereby giving rise to jurisdiction over that federal question and supplemental jurisdiction over the remaining issues in the case). *Id.*

To expand on that a bit, the *Osborn* Court applied the well-established rule that a party's ultimate failure to state a federal cause of action (i.e., the officer fails to prove his entitlement to Westfall Act immunity) does not mean he failed properly to invoke the district court's subject-matter jurisdiction in the first instance. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction."). In light of this rule, the *Osborn* Court effectively concluded that the Attorney General's invocation of Westfall Act immunity via scope-of-employment certification raised a valid federal question permitting removal. The Court then held that the federal district court should retain the case to exercise supplemental jurisdiction over the state tort law claim even after resolving the immunity question against the officer. *Osborn*, 549 U.S. at 244–45. Namely, the district court's "invest[ment of] time and resources to resolve the pivotal [Westfall Act] scope-of-employment contest" meant that "considerations of judicial economy, convenience and fairness to litigants [would] make it reasonable and proper for a federal court to proceed to final judgment" on the tort claim against that defendant. *Id.* (cleaned up).

11

In sum, *Osborn v. Haley* stands for the rule that the federal court can validly exercise jurisdiction over a case involving a state-law tort claim against a federal officer removed under the Westfall Act because the Attorney General's scope-of-employment certification constitutes competent evidence raising a valid federal question. Further, under *Osborn*, a federal court should maintain jurisdiction over that case until final judgment is rendered on the claim supporting removal. That is to say, once the court resolves the tort claims against the officer that had supported removal in the first place, *Osborn* does not displace the normal rules governing federal courts' remand of matters over which they lack subject-matter jurisdiction. 28 U.S.C. §§ 1367(c), 1447(c).

With *Osborn v. Haley*'s holding clear, does the Court need to revisit the remand order it entered previously? The short answer is yes.

The Court had held that former President Obama removed this case under only 28 U.S.C. § 1442(a)(1), *Jordan*, 2024 WL 804807, at *2, which would not implicate *Osborn*, *see* 549 U.S. at 235 n.4, 249 n.13. But the Court now finds that its prior reading of the Notice of Removal was too narrow. The Court had focused on the clear language in the Notice of Removal stating that "[u]nder 28 U.S.C. § 1442, Defendant Former President Barack H. Obama removes to this Court a civil action originally filed in the Hamilton County Court of Common Pleas, Ohio." (Doc. 1, #1). But the document also contains additional ambiguous language: in particular, it later employs the passive voice to suggest that the "action is removable under 28 U.S.C. §§ 1442(a)(1) *and 2679(d)(2)*." (*Id.* at #1–2 (emphasis added)). The problem with

passive voice generally is that it hides the actor's identity, and that poses particular issues in the context of Westfall Act cases. That is because under § 2679(d)(2), the federal officer cannot remove. Rather one entity, and only one entity, has that authority: the United States acting through the Attorney General. 28 U.S.C. § 2679(d)(2) (instructing that an applicable cause "shall be removed … *by the Attorney General,*" when the United States seeks removal under the Westfall Act (emphasis added)); *see Osborn*, 549 U.S. at 249, 252 n.17 (concluding based on the language in § 2679(d)(3), which employs materially similar wording to § 2679(d)(2), that "the Westfall Act gives the named defendant no right to remove … [as] [t]hat right is accorded to the *Attorney General only*" and contrasting Westfall Act removal power, which is reserved for the United States, with removal under § 1442(a)(1), which officers can personally invoke (emphasis added)).

Against that backdrop, confusion arose here because the government has suggested in all its papers that neither the Attorney General nor the United States sought to effect removal—only former President Obama did. (Doc. 1, #1 ("Under 28 U.S.C. § 1442, Defendant Former President Barack H. Obama removes to this Court a civil action originally filed in the Hamilton County Court of Common Pleas, Ohio."); Doc. 6, #38 (United States's acknowledging that "[f]ormer President Obama removed the case"); Doc. 12, #81 ("Former President Obama removed the case to this Court.")); *see also* Notice of Filing a Notice of Removal in Federal Court at 1, *Jordan v. Carter*, A 2302239 (Hamilton Cnty. Ct. Com. P. July 28, 2023) [hereinafter Notice of Filing], https://perma.cc/8NEP-JWRM ("Defendant Former President Barack H. Obama has

filed a Notice of Removal in the United States District Court for the Southern District of Ohio, Western Division." (footnote omitted)).[4] These filings suggest that while the United States Attorney's Office filed the Notice of Removal and other documents on former President Obama's behalf, it acted as *his* counsel in doing so, rather than as counsel for another entity.[5] But if that is so, if President Obama had initiated the removal, only § 1442, and not § 2679(d)(2), provided a basis for that removal. 28 U.S.C. § 2679(d)(2); *see Osborn*, 549 U.S. at 252 n.17. And to complicate matters further, after mentioning § 2679(d)(2) in passing in the Notice of Removal, the government failed to reference the provision again in either the corresponding notice it filed in state court, which state-court notice "effect[s] the removal" under 28 U.S.C. § 1446(d), or in its notice of substitution. Notice of Filing, *supra*, at 1 (suggesting former President Obama's removal was effectuated "[pursuant to 28 U.S.C. §§ 1442 and 1446" and failing to cite § 2679(d)(2) as another basis for removal); (Doc. 2, #20 (citing a different provision of the Westfall Act)).

Taken together, these procedural quirks created the impression that the United States did not intend—or at the very least failed to provide clear notice of its intention—to seek removal under § 2679(d)(2). But on the other hand, certain clues point another way, as well. As already noted, the United States used passive voice in

---

[4] As this document was filed in the Hamilton County Court of Common Pleas in this cause, the Court may take judicial notice of it. *Dates v. HSBC*, 1:24-cv-81, 2024 WL 860918, at *1 n.1 (S.D. Ohio Feb. 29, 2024) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969)).

[5] This contrasts, for example, with the notice of removal in *Osborn v. Haley*, in which the government made clear that the removing party was the *United States*, not the officer. Notice of Removal by the United States of America at 3, *Osborn v. Haley*, No. 5:03-cv-192 (W.D. Ky. Aug. 20, 2003), ECF No. 1 ("[T]he United States requests removal of the above-styled action to the United States District Court pursuant to 28 U.S.C. §§ 1442, 1446 and 2679.").

the Notice of Removal (leaving open the possibility that some actor other than former President Obama might be seeking removal). (Doc. 1, #1–2). Beyond that, it included a certification regarding the scope of employment, (Doc. 1-5), and otherwise referenced § 2679 in the relevant filings, (Doc. 1); Notice of Filing, *supra*, at 1 (citing 28 U.S.C. § 2679(d)(1) in a footnote to suggest that substitution would occur under that provision after removal). So while it is a close call, upon further review the Court concludes that the government did just enough to signal that it removed this cause under § 2679(d)(2). That said, the Court urges the government to take greater care in drafting its notices of removal so that they clearly identify the basis on which removal is occurring.

In any event, with the understanding that the United States sought to remove this case under § 2679(d)(2), the Court agrees that *Osborn v. Haley* governs. Accordingly, the Attorney General's certification raises a valid federal question permitting this Court to exercise subject-matter jurisdiction over the Westfall Act immunity issue and to resolve the related state-law tort claims. As to the Westfall Act question, no party challenged the United States's substitution, so it is the proper defendant for the state-law tort claims raised against former President Obama. *Osborn*, 549 U.S. at 229 ("The Westfall Act accords federal employees absolute immunity from *common-law tort claims* arising out of acts they undertake in the course of their official duties." (emphasis added) (cleaned up)).[6] And that converts

---

[6] As the Westfall Act authorizes substitution only for claims sounding in tort, *Osborn*, 549 U.S. at 229; *Abernathy v. Kral*, 779 F. App'x 304, 308 n.2 (6th Cir. 2019), the Court makes clear that its prior decision could not (and therefore did not) substitute the United States as

Jordan's tort law claims against former President Obama into FTCA claims against the United States. 28 U.S.C. § 2679(b)(1) (noting that the "remedy against the United States [for its employee's torts] provided by [the FTCA] … is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter").

Whether Jordan's tort claims are framed as merely common law claims or disguised FTCA claims, the Court's prior determination regarding their frivolousness still stands. *Jordan*, 2024 WL 804807, at *3. It remains true today, just as it did when the Court ruled previously, that the Complaint raises "fanciful allegations that rise to the level of the irrational or the wholly incredible." *Id.* (cleaned up). And such factually and legally frivolous claims fail to raise a substantial federal question, such that the Court lacks federal-question jurisdiction over them. *Id.* But *Osborn*'s command that the Court adjudicate, rather than remand, these FTCA claims causes the Court to deviate slightly at this juncture from its prior opinion and order—this finding that the Court lacks federal-question jurisdiction over the FTCA claims does not result in a wholesale remand. Rather, the Court resolves the legally and factually frivolous FTCA claims that supported removal by dismissing them under the Prison Litigation Reform Act, which instructs that when a plaintiff proceeds in forma pauperis (IFP), *see Jordan*, 2024 WL 804807, at *1 n.2, "the court shall dismiss … [any claim raised that is] frivolous." 28 U.S.C. § 1915(e)(2)(B)(i); *see Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (explaining that under the then-

---

the defendant for any common-law contract claims Jordan raised against former President Obama. As to those claims, the Court must evaluate whether to assert supplemental jurisdiction under 28 U.S.C. § 1367. *See infra* note 7. And as explained below, the Court declines to do so. *See infra* note 8.

applicable statute governing IFP complaints, "frivolous" claims are those that are "clearly baseless," "fanciful," "fantastic," or "delusional," which descriptors mirror the standard governing a federal court's determination that a complaint fails to raise a substantial federal question); *cf. Hagans v. Lavine*, 415 U.S. 528, 536–38 (1974) (employing similar verbiage to define frivolous federal claims that do not properly invoke a court's federal-question jurisdiction). Though dismissals under § 1915(e)(2)(B)(i) for frivolousness have been deemed not to be dismissals on the merits, *Denton*, 504 U.S. at 34; *cf. Davis v. Butler Cnty.*, 658 F. App'x 208, 213 & n.5 (6th Cir. 2016), the Court may nonetheless dismiss such claims *with prejudice* if it finds that they are "irremediably defective." *Lomax v. Ortiz-Marquez*, 590 U.S. 595, 602 (2020). As Jordan's claims are of just that sort, the Court dismisses the tort claims against former President Obama (i.e., the disguised FTCA claims against the United States) with prejudice.

But once the claims underlying the government's removal are adjudicated via a dismissal without prejudice, the United States is no longer a party to the suit and the Court is left with a Complaint filled with other factually and legally frivolous state-law claims. *Jordan*, 2024 WL 804807, at *3. As the Court explained above, *Osborn*'s holding about retaining jurisdiction applies only to the extent that the initial tort claims implicating the Westfall Act remained outstanding. Seeing as those tort claims, which served as the basis for removal here, have been fully adjudicated, the

17

Court may resolve the remaining (state-law) claims as it normally would: by considering whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).[7]

---

[7] The government's *Osborn v. Haley* argument suffices to invoke the Court's federal-question jurisdiction, which thereby permits the Court to exercise supplemental jurisdiction over any other claims arising "from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367. So technically, the Court need not turn to the government's alternate policy argument that § 1442(a)(1) can be construed broadly to foreclose remands under the plain language of § 1447(c), (*see* Doc. 12, #90–94). But the Court chooses to do so briefly because it holds that it is proper to decline to exercise supplemental jurisdiction over the remaining state-law claims, including the contract claims purportedly raised against former President Obama, *see infra* note 8.

For starters, it is well-settled that a federal officer's invoking § 1442(a)(1) does not alone suffice to create federal jurisdiction over claims he seeks to remove. Rather he must include averments in his notice of removal of an anticipated federal defense, *Mesa v. California*, 489 U.S. 121, 136 (1989), and must establish a nexus between the "charged conduct and asserted official authority." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (citation omitted); *Abernathy*, 779 F. App'x at 307. Though the government acknowledges this caselaw governs here, (Doc. 12, #90), it nonetheless fails to identify what federal defense *former President Obama* personally raised in his Notice of Removal justifying his decision to remove this cause under § 1442(a)(1). (*Id.* at #91 (explaining that "the United States … raised several federal defenses" it held as the sovereign after removal and after moving to be substituted in place of former President Obama)). That bars him from relying on § 1442(a)(1) to support this Court's jurisdiction over any of the remaining claims following the United States's dismissal as a party. *Mesa*, 489 U.S. at 123–24. And because the officer must substantiate the nexus between the charged conduct and his assertion of official authority, the allegations and the basis for removal are inherently intertwined questions. *Abernathy*, 779 F. App'x at 307. But as the Court has thoroughly explained, *Jordan*, 2024 WL 804807, at *3, any inquiry into the charged conduct in the Complaint (and by implication its connection to the assertion of official authority) requires sifting through a myriad of "allegations [that] … are totally implausible" and therefore beyond the ken of federal subject-matter jurisdiction. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans*, 415 U.S. at 536–37).

As a result, the Court still finds merit in its prior opinion holding that such implausibility, in the absence of any other jurisdictional hook, requires remand under the plain language § 1447(c). As a result, the Court adheres to that reasoning now insofar as it concludes that § 1442(a)(1) would not otherwise support the Court's subject-matter jurisdiction over any of the remaining non-FTCA claims. *Jordan*, 2024 WL 804807, at *3–*6. In other words, setting aside the Court's procedural mistake in overlooking the United States's removal under the Westfall Act, nothing in the policy arguments the government now posits suggests the Court otherwise erred in concluding that remand under § 1447(c) was compelled by the lack of subject-matter jurisdiction, to the extent that § 1442(a)(1) was the basis for removal. The Court already considered the practical implication of that holding and rejected policy as an improper basis for disregarding the plain text of § 1447(c). *Id.* at *5–*6; *accord Moodie v. The Ship Phoebe Anne*, 3 U.S. (3 Dall.) 319, 319 (1796) (Ellsworth, C.J.) ("Suggestions of policy

18

For supplemental jurisdiction to lie, the state-law claims must arise "from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021) (applying *Gibbs* to claims that hitched a ride to federal court with other validly removed claims). But that requires the Court to find that the state-law claims raised have some factual overlap with the claims that give rise to federal jurisdiction (here the FTCA claims)— either because the claims arise out of the same incident or otherwise have a legally significant factual nexus. *Kubala*, 984 F.3d at 1138 (concluding that supplemental jurisdiction would not lie when plaintiff's sexual harassment and First Amendment claims shared no "fact other than his employment status"). What about Jordan's claims here? The answer (as should not be surprising given what has been explained above and previously) is it is wholly unclear. The claims are legally and factually frivolous primarily because the allegations are inscrutable. *Jordan*, 2024 WL 804807, at *1, *3; (Doc. 12, #81 n.1). And that makes any inquiry into whether the claims raised (to the extent anyone could identify what those claims are) turn on a common nucleus of operative facts a largely fruitless exercise. That doubt about whether these claims fall within the Court's supplemental jurisdiction alone suffices to require a

and conveniency cannot be considered in the judicial determination of a question of right: the Treaty with France, whatever that is, must have its effect."); *see generally Gilstrap v. Sushinati LLC*, No. 1:22-cv-434, 2024 WL 2197824, at *6 & n.6 (S.D. Ohio May 15, 2024) (observing that the rule that "policy considerations cannot and should not substitute for a conclusion grounded in the statute's text and structure" is a "principle [that] is so strongly embedded in our caselaw that it seems to rear its head in at least one Supreme Court opinion every term" (cleaned up)). Simply put, the Court's prior finding that removal under § 1442(a)(1) could not support its subject-matter jurisdiction over the non-FTCA claims still stands—accordingly, the Court may exercise jurisdiction over the remaining state-law claims only if supplemental jurisdiction is warranted under § 1367.

remand for want of subject-matter jurisdiction under the plain language of 28 U.S.C. § 1447(c). *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) ("All doubts as to the propriety of removal are resolved in favor of remand.").

But even assuming for sake of argument that § 1367 permits the Court to exercise supplemental jurisdiction over the remaining state-law claims, it finds that the relevant factors of "judicial economy, convenience, fairness, and comity" all favor declining to exercise supplemental jurisdiction and remanding the remainder of the case to state court. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (citation omitted). For starters, this case is being analyzed only at the *screening* stage—even before service of nearly all of the Defendants, which creates a strong presumption favoring state court resolution of the state-law claims. *Id.* at 1255. Only "unusual circumstances" will overcome this presumption, and none are present. *Id.* (citation omitted). By virtue of the fact that remand occurred only at the screening stage, almost no federal resources have been expended. For similar reasons, no party would be prejudiced by a remand given how little litigation has occurred up to this point—a state court can easily pick up the cause at this moment in time. *Id.* at 1256 (noting that resubmission of already written motions following remand and the minor delay related to state court resolution of such motions did not mean unusual circumstances requiring the federal court to assert supplemental jurisdiction over the remaining state-law claims existed). And given the Court has essentially evaluated only whether there is federal jurisdiction over the claims raised (rather than has dug into their merits), there is no risk of duplication of proceedings.

Retaining these claims would therefore not serve the interests of judicial economy, fairness, or convenience. *Id.*

Finally, and most importantly, comity weighs heavily into this calculus. Only state law matters are left. And the Court still finds merit in its prior determination that the claims and allegations are so fanciful that they would not otherwise fall within the ambit of federal subject-matter jurisdiction. *Jordan*, 2024 WL 804807, at *3. So there is precious little to commend federal resolution of what is left of this fantastical case. Comity (and the Court's attendant doubts as to whether supplemental jurisdiction can properly be exercised over the remaining matters) strongly supports holding that the remaining claims "are best left for state courts to answer in the first instance." *Kowall v. Benson*, 18 F.4th 542, 549 (6th Cir. 2021). So the Court concludes that even if it could exercise supplemental jurisdiction, it should decline to do so under § 1367(c) and send the matter back to state court.[8]

---

[8] The United States's attempt to assume former President Obama's liability for those claims does nothing to change this analysis. (Doc. 6, #39–40). As explained, the Court has authority over those claims only to the extent that they fall within its supplemental jurisdiction and warrant its discretionary assertion of that jurisdiction: the contract claims are not wrapped up in the Westfall Act analysis, *see supra* note 6, and § 1442(a)(1), by not supporting the removal of this cause, does not provide a viable alternate avenue for the Court to assert jurisdiction over them, *see supra* note 7. But to establish the Court's supplemental jurisdiction over the claims, the Court must conclude that the fantastic and almost indecipherable claims in the Complaint arise from the same nucleus of operative fact as the FTCA claims otherwise raised—an exercise on par with tilting at windmills. *Jordan*, 2024 WL 804807, at *1, *3. As the Court cannot meaningfully establish the validity of exercising supplemental jurisdiction over such fanciful contract claims, it must follow the plain text of § 1447(c) and remand for want of subject-matter jurisdiction—the same holding the Court reached above for all the other non-FTCA claims.

And even if supplemental jurisdiction could be asserted, that the Westfall Act does not apply means those contract claims against former President Obama are no different than the other non-FTCA claims in the Complaint: state-law claims raised against private individuals. So any suggestion (based solely on argument, rather than on allegations or other record

Altogether, the Court recognizes upon fresh review that the government inartfully sought removal under the Westfall Act. Because its opaque notice of removal caused the Court to overlook the statutory removal mechanism employed, the Court did not address (and therefore improperly failed to apply) the holding in *Osborn v. Haley*. With the basis for removal now established, this legal error is clear and therefore the Court must correct it by amending the previous remand order. *Intera Corp.*, 428 F.3d at 620–21. So, for the reasons explained, the Court rights the ship by first dismissing the common law tort claims raised against former President Obama, which are disguised FTCA claims against the United States, and then by remanding the remaining state-law claims to state court (regardless whether remand

---

evidence) that former President Obama cannot be held liable on any contract he impliedly made with Jordan, (*see* Doc. 6, #39–40), turns on the merits of any contract claim alleged and any attendant agency issues—pure state-law questions. *E.g.*, *Versatile Helicopters, Inc. v. City of Columbus*, 548 F. App'x 337, 340–41 (6th Cir. 2013) (explaining the differing rules of liability for agents and principals in contracts and holding what rule applies turns on factual issues that must be submitted to the jury). This is bolstered by the fact that Jordan's allegations against former President Obama about the $20 million the President allegedly owes him do not in any way suggest that Jordan implicitly demands that money from the United States: Jordan refers to President Obama as the "Former President," his allegations related to the money do not provide specific dates that would otherwise suggest that the alleged discussion occurred during former President Obama's presidency, and Jordan attaches personal correspondence from former President Obama dated *after* he left Office implying that contractual liability (if any) would stem from the former President's personal actions post federal employment. (Doc. 3, #25–26, 28). Those details, which relate to the merits, confirm that the contract claims against former President Obama (to the extent that they exist) are in the same boat as all the other state-law claims raised: as part of a case that has barely moved past the pleading stage and involves solely state-law matters, they should be resolved by a state court, principally as a matter of comity. *Musson*, 89 F.3d at 1254–56. Simply put, that there may be a defense on the merits to the state-law contract claims raised against former President Obama does not change the Court's supplemental jurisdiction calculus. Like all other non-FTCA claims raised in this case, all relevant factors applicable to the § 1367(c) analysis point to remand, especially given the fantastic nature of the Complaint gives the Court pause as to whether the remaining claims properly fall within the scope of its supplemental jurisdiction.

results from the application of § 1447(c) because the Court lacks supplemental jurisdiction over those claims or from the Court's declining to exercise supplemental jurisdiction over them under § 1367(c)).

### CONCLUSION

In light of the government's briefing clarifying the basis for removal, the Court concludes it must correct its previous error. As a result, the Court **GRANTS** the Motion for Reconsideration (Doc. 12). Accordingly, pursuant to 28 U.S.C. § 1447(d), which authorizes the Court's review of its February 27, 2024, remand order, (Doc. 10), the Court **AMENDS** that Order as follows: The Court **DISMISSES WITH PREJUDICE** any state-law tort claims Jordan raised against former President Obama, which legally constitute FTCA claims against the United States, and **REMANDS** all other claims to the Hamilton County, Ohio, Court of Common Pleas.

The Court **DIRECTS** the Clerk to **TRANSMIT** forthwith a copy of this Opinion and Order to the Hamilton County, Ohio, Court of Common Pleas to be filed on the corresponding state court docket in this matter.

**SO ORDERED.**

July 2, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

23